UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| L&P PAPER, INC., | ) | |
| Plaintiff/Counterclaim-Defendant, | ) ) ) | |
| v. | ) | |
| NORTH AMERICAN COMMUNICATIONS, INC., | ) ) ) | Civil Action No. 17-40149 |
|  | ) | [Amended Counterclaim |
| Defendant/Counterclaim-Plaintiff, | ) ) | Leave to File Granted 9/27/2018] |
| v. | ) ) | |
| L&P PAPER, INC., AND MARTIN GUBB | ) ) | |
| Counterclaim-Defendants. | ) ) | |

## ANSWER AND AMENDED COUNTERCLAIM

### ANSWER

Defendant North American Communications, Inc. ("NAC") answers as follows the correspondingly numbered paragraphs of the Complaint by L&P Paper, Inc. ("L&P").

**Parties.**

1. NAC admits the allegations in ¶ 1, on information and belief.

2. NAC admits the allegations in ¶ 2.

**Basis for Jurisdiction.**

3. NAC admits the allegations in ¶ 3.

**Factual Allegations.**

4. NAC admits the allegations in ¶ 4, on information and belief.

5. NAC admits the allegations in ¶ 5, and further answers that L&P obtained the orders reflected in the Invoices through illegal means.

Case 19-03049-TAD    Doc 49-2    Filed 09/29/19    Entered 09/29/19 Page 1 of 9    Desc
Case 1:17-cv-00149-SH    Document 33    Filed 10/19/18    Page 12 of 14
Exhibit Amended Answer and Counterclaim    Page 2 of 9

6. NAC admits the allegations in ¶ 6, and further answers that L&P obtained the orders reflected in the Invoices through illegal means, and L&P owes an amount to NAC that offsets, and potentially exceeds, L&P's invoices to NAC.

7. NAC denies that Robert Herman participated in the phone call described in this paragraph, and admits the remaining allegations in ¶ 7.  NAC further answers that Mr. Robinson advised Mr. Gubb that Mr. Gubb had obtained the orders through illegal means, and that the amount NAC owed to L&P was offset by the amount L&P owed to NAC as a result of the overcharges.

## Count I
### [Goods Sold and Delivered]

8. NAC adopts by reference its answers to the preceding paragraphs.

9. NAC denies the allegations in ¶ 9.

## Count II
### [Breach of Contract]

10. NAC adopts by reference its answers to the preceding paragraphs.

11. NAC denies the allegations in ¶ 11.

## Count III
### [Uniform Commercial Code, Art. 2]

12. NAC adopts by reference its answers to the preceding paragraphs.

13. NAC denies the allegations in ¶ 13.

### Affirmative Defenses

**First Affirmative Defense.** Any contractual agreement between L&P and NAC is unenforceable as a result of L&P's illegal and fraudulent activities, as described in the Counterclaim below, and L&P has forfeited on account thereof any right to collect any unpaid invoices.

2

**Second Affirmative Defense.** L&P is barred from recovery by its illegal and fraudulent acts and omissions, as described in the Counterclaim below, and L&P has forfeited on account thereof any right to collect any unpaid invoices.

### AMENDED COUNTERCLAIM AGAINST L&P PAPER AND MARTIN GUBB

### Parties.

1. NAC is a Pennsylvania corporation with its principal place of business at 141 NAC Drive, Duncansville, Pennsylvania.

2. L&P is a Nevada corporation registered in the Commonwealth of Massachusetts with its principal place of business at 257 Southbridge Road, Charlton, Massachusetts.

3. Martin Gubb ("Gubb") is President of L&P.  On information and belief, Gubb maintains residences in California, Nevada and Arizona.

### Jurisdiction and Venue.

4. There is diversity of citizenship among the parties and the amount in controversy exceeds $75,000, exclusive of interests and costs  As such, jurisdiction is appropriate under 28 U.S.C. § 1332.

5. L&P has its principal place of business in this District.  Gubb regularly and continuously transacts business in this District, supplies goods and services in the District, and derives substantial revenues from the sale of goods and services in the District.  Therefore, the Court has personal jurisdiction over L&P and Gubb, and venue is proper in this District pursuant to 28 U.S.C. § 1391(a).

3

**Factual Allegations**

6.  NAC is a leading provider of direct mail marketing in the United States and internationally. In connection with its business, NAC purchases and uses substantial quantities of paper.

7.  L&P is engaged in the sale, production, and shipment of paper products from its office in Charlton, Massachusetts to various end-users of paper products.

8.  NAC first purchased paper from L&P in 2004. From 2013 through 2017, the quantity of paper that NAC purchased from L&P increased exponentially. NAC purchased less than $700,000 of paper products, total, from L&P in the years 2004 through 2012. NAC's purchases increased to over $15 million of paper products in the years 2013 through 2017.

9.  Unbeknownst to NAC, in or around 2013 through 2017, L&P, Gubb, and possibly other persons associated with L&P, engaged in a scheme to sell paper to NAC at inflated prices through the use of bribes to NAC's Purchasing and Scheduling Coordinator ("Purchasing Agent"), who had day-to-day responsibility for purchasing paper.

10. In late October 2017, NAC was contacted by an individual who said he had worked as a Credit Manager for L&P for nearly 30 years, until his retirement in August 2017. This individual reported that for many years, L&P and Gubb had instituted a scheme that involved bribery of NAC's Purchasing Agent to fraudulently extract from NAC an amount of money for the paper sold that was above its reasonable and fair value, amounting to more than $500,000 in overcharges to NAC. The former employee stated that L&P and Gubb had carried out this scheme by giving NAC's Purchasing Agent over $10,000 in gift cards, plus other things of value, and that Gubb had openly bragged about this scheme. The former employee gave examples of specific purchase orders for which L&P had overcharged NAC. The employee

4

described this as "business as usual" for L&P, suggesting that other customers of L&P were victims of a similar scheme.

11. Shortly after this conversation, NAC management questioned its Purchasing Agent about these allegations. The Purchasing Agent acknowledged that for the last several years, Gubb had routinely sent gift cards to her home address in amounts ranging from $50 to $500; had given her a large, flat screen television set, a Blu Ray DVD player, and an Amazon Kindle, among other gifts; and had paid on her behalf approximately $3,000 to a garage for vehicle repairs and approximately $2,000 to her lender for a mortgage payment. L&P and Gubb arranged to make these bribes from L&P's location in Massachusetts, they shipped paper products to NAC from L&P's facility in Massachusetts, they sent invoices for the products from Massachusetts, and payments were remitted to L&P in Massachusetts.

12. Upon discovery of this scheme and its interview of the Purchasing Agent, NAC stopped all payment to L&P pending internal investigation of the bribery and overcharges.

13. NAC's internal investigation is not yet complete, but the investigation to date reveals that from 2013 through 2017, the amounts NAC paid to L&P were greater than the reasonable and fair value of the paper purchased.

14. NAC has paid L&P at least $560,000 more than NAC would have paid to other vendors for identical or similar product if the Purchasing Agent had not steered purchases to L&P as a result of the bribery scheme.

15. L&P also has overcharged NAC for paper products through the use of fraudulent shipping and invoicing practices. In the years 2013 through 2017, L&P routinely delivered to NAC more paper than NAC ordered or required, resulting in increased amounts due and paid to L&P and increased storage costs borne by NAC. L&P also routinely shipped paper to incorrect

5

Case 19-03049-JAD Doc 49-2 Filed 10/19/29 Entered 10/19/29 Page 16 of 19 Desc
Case 4:17-cv-40149-TSH Document 33 Filed 09/29/18 Page 6 of 9
Exhibit Amended Answer and Counterclaim    Page 6 of 9

locations or charged inappropriate freight charges, increasing the shipping costs borne by NAC. L&P made it very difficult for NAC to discover these practices, because L&P frequently split a paper order into multiple shipments or combined several paper orders, and failed to include bills of lading or shipping manifests. NAC is in the process of investigating the full extent of these overcharges. Again, NAC would not have incurred or paid these inflated amounts for paper products if the Purchasing Agent had not steered purchases to L&P as a result of the bribery scheme.

16. In early November 2017, Nicholas Robinson of NAC advised Gubb that NAC was aware of the scheme to bribe its Purchasing Agent and the overcharges. Gubb did not deny that he had given things of value to NAC's Purchasing Agent, but claimed that any overcharges or premium prices on paper were justified by the level of service L&P provided to NAC.

17. In furtherance of their scheme to fraudulently obtain money from NAC and in an effort to conceal their fraud, Gubb has caused L&P to file a suit in the Massachusetts Superior Court against L&P's former employee who had notified NAC of the fraudulent activities. The complaint against the former employee contains vague allegations of tortious interference with contract and breach of a fiduciary duty, and omits any reference to L&P and Gubb's bribery scheme. Upon information and belief, this suit was intended to intimidate the former employee and to cause him to reconsider whether he would cooperate with NAC in figuring out the extent of the bribery scheme and the damages sustained thereby. As a result of the lawsuit, the former employee, who was initially eager to share with NAC more information about the bribery scheme, has since declined to cooperate further.

**Count I**
**[Fraud, Deceit and Conversion against L&P and Gubb]**

18. NAC adopts by reference the allegations in ¶¶ 1-17 of its Counterclaim, above.

6

19. Through bribery of NAC's agent in violation of G.L. c. 271, § 39(a), L&P and Gubb wrongfully appropriated money from NAC by obtaining purchase orders from NAC at inflated prices and by using fraudulent shipping and invoicing practices.

20. As a result of L&P and Gubb's actions, NAC paid a higher price for paper than it otherwise would have paid, and has suffered damages of not less than $560,000 based on a preliminary internal investigation; it is likely, however, that further investigation will show that the damages are substantially greater.

## Count II
### [General Laws Chapter 93A, Section 11, against L&P and Gubb]

21. NAC adopts by reference the allegations in ¶¶ 1-20 of its Counterclaim, above.

22. NAC is engaged in the conduct of trade or commerce in Massachusetts.

23. L&P and Gubb are engaged in the conduct of trade or commerce in Massachusetts.

24. L&P and Gubb's activities, including bribery of NAC's agent in violation of G.L. c. 271, § 39(a), constituted unfair and deceptive acts in violation of General Laws Chapter 93A, §§ 2 and 11.

25. L&P and Gubb's violations of Chapter 93A have caused NAC significant loss of money or property.

26. L&P and Gubb's violations of Chapter 93A were willful and knowing.

## Count III
### [Unjust Enrichment against L&P and Gubb]

27. NAC adopts by reference the allegations in ¶¶ 1-26 of its Counterclaim, above.

28.     As a result of L&P and Gubb's bribery of NAC's agent, L&P and Gubb obtained a higher price for paper than they otherwise would have received, and NAC paid a higher price than it otherwise would have paid for the same product.

29.     Through L&P and Gubb's actions, L&P and Gubb were unjustly enriched to the detriment of NAC.

## Count IV
### [General Laws, Chapter 231, Section 85J, against L&P and Gubb]

30.     NAC adopts by reference the allegations in ¶¶ 1-29 of its Counterclaim, above.

31.     L&P and Gubb, through bribery of NAC's agent and fraudulent shipping and invoicing practices, sold paper products to NAC in violation of G.L. c. 231, § 85J.

32.     As a result of L&P and Gubb's actions, NAC paid inflated amounts for paper products, and has suffered damages.

**WHEREFORE,** NAC respectfully requests that:

(a)     the Court enter judgment against L&P and Gubb on all claims and for such damages as may be proved at trial, including treble damages under General Laws c. 93A and c. 231, § 85J; and attorneys fees under General Laws c. 93A;

(b)     the Court award such further relief as it deems just and appropriate.

8

**Jury Trial Demand**

NAC demands a jury trial in this case on all issues so triable.

                              NORTH AMERICAN COMMUNICATIONS, INC.,
                              By its attorneys,

                              /s/Melissa C. Allison
                              Melissa C. Allison (BBO #657470)
                              Carmen M. Ortiz (BBO # 380390)
                              mallison@andersonkreiger.com
                              cortiz@andersonkreiger.com
                              ANDERSON & KREIGER LLP
                              50 Milk, 21st Floor
                              Boston, MA 02109
                              617.621.6500

Dated: August 31, 2018

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system was sent electronically to counsel of record for all parties on this 31st day of August, 2018.

                              /s/Melissa C. Allison